IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROBBIN L. THOMPSON,          *

                              *

     Plaintiff,           *

                              *

vs.                        *   Civil Action No. 05-00447-CG-B

                              *

JO ANNE B. BARNHART,       *

Commissioner of          *

Social Security,        *

                              *

     Defendant.          *

## REPORT AND RECOMMENDATION

Plaintiff Robbin L. Thompson ("Plaintiff") brings this action seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, 1381-1383h.  This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Oral argument was held on May 22, 2006.  Upon consideration of the administrative record and memoranda of the parties, it is recommended that the decision of the Commissioner be **REVERSED** and **REMANDED.**

## I.  Procedural History

Plaintiff protectively filed an application for disability benefits on March 26, 2001, alleging disability since August 30, 1998 due to migraine headaches, depression and lumbar strain with

neck pain and back pain.[1]   (Tr. 16, 53, 66-68, 122, 485-490).
Plaintiff's application was initially denied, and upon
reconsideration, she filed a request for a hearing before an
Administrative Law Judge ("ALJ").  (Id. at 41-42, 53-62, 489-495).
On February 14, 2002, ALJ James D. Smith ("ALJ Smith") held an
administrative hearing which was attended by Plaintiff and her
representative.  (Id. at 615-631).  On April 3, 2002, ALJ Smith
issued an unfavorable decision in which he concluded that Plaintiff
retained the residual functional capacity ("RFC") for light work
and could perform all of her past relevant work ("PRW").  (Id. at
496-510, 587-601).  Plaintiff requested review of the decision and
on May 20, 2003, the Appeals Council ("AC") concluded that her
claims had not been adequately evaluated and remanded the case for
a new hearing.[2]  (Id. at 532-534).  On December 1, 2003, a second
hearing was held before ALJ Smith which was attended by Plaintiff,
her representative and a vocational expert ("VE").  (Id. at 632-
645).  On April 14, 2004, ALJ Smith issued an unfavorable decision
finding that Plaintiff retains the RFC for light work and is
capable of performing her PRW as a cashier/checker, waitress,
sewing machine operator and production line assembler.  (Id. at 13-
34).  Plaintiff sought review of the ALJ's decision, and on June 3,

---

[1]Plaintiff previously filed other DIB and SSI applications, which were
denied; she did not appeal the denial of those applications. (Id. at 16, 36-
40, 63-65).

[2]The ALJ was directed to evaluate Plaintiff's mental impairments and the
medical opinions of record concerning same. (Id. at 532-534).

2005, the AC denied her request for review; thus, the ALJ's decision became final. (Id. at 4-6). The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  **Background Facts**

Plaintiff was born on August 30, 1962 and was 41 years old at the time of the second administrative hearing on December 1, 2003. (Tr. 41, 66, 486, 617, 634). Plaintiff has a 10th grade education, is 5'1", has weighed between 98-120 pounds, and has PRW as a seamstress, production line worker, cashier, cook, stock clerk and waitress. (Id. at 79, 81, 86, 93, 123, 128, 132, 139, 186-187, 567-568, 618-619, 634-636). She lasted worked in 2000 as a seamstress. (Id. at 619, 635). Plaintiff testified that she lives with her three year old daughter, next door to her parents. (Id. at 635, 638). Regarding her medical problems, Plaintiff testified that she suffers from migraines, IBS, GERD, TMJ, neck problems and lower back problems (L-1 and L-2 compressions), for which she receives treatment from Dr. William Fleet. (Id. at 637). Plaintiff reported that she takes 15 different prescriptions for her migraines, adding that "sometimes" the medications help, but that she does not "function very well" taking them and relies upon her mother for assistance. (Id. at 637-638). Plaintiff reported that she has migraines at least 4-5 times each month, wakes up and goes to sleep with them, and that they last 2-3 days at a time.

(Tr. 639).  To treat her migraines, Plaintiff stays in bed during such episodes, because she cannot stand light, sound or noise, and is nauseated and constantly throwing up.  (<u>Id</u>. at 639, 641).  She relies on her mother to care for her child during such episodes.  (<u>Id</u>.)  Plaintiff testified that she has not been admitted to any hospital in the last two years or received emergency room treatment in the last 12 months.  (<u>Id</u>. at 636).

## III.  <u>Issues on Appeal</u>

A.  Whether the ALJ erred by rejecting the opinion of Dr. Fleet, Plaintiff's treating physician, with regard to her migraines?

B.  Whether the ALJ erred by making an improper credibility and pain determination by rejecting Plaintiff's subjective complaints, with regard to her migraines?

C.  Whether the ALJ erred by failing to properly determine Plaintiff's residual functional capacity by failing to properly consider the opinion evidence of Plaintiff's treating physician and Plaintiff's credibility, with regard to her migraines?

## IV.  <u>Analysis</u>

### A.  <u>Standard of Review</u>

In reviewing claims brought under the Act, this Court's role is a limited one.  This Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence, and 2) whether the correct legal standards were applied.  <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990).[3]  A court may not decide the facts anew, reweigh the evidence, or substitute

---

[3]This Court's review of the Commissioner's application of legal principles is plenary.  <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987).

its judgment for that of the Commissioner.  Sewell v. Bowen, 792
F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of
fact must be affirmed if they are based upon substantial evidence.
Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth
v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that
substantial evidence is defined as "more than a scintilla but less
than a preponderance," and consists of "such relevant evidence as
a reasonable person would accept as adequate to support a
conclusion[]").   In determining whether substantial evidence
exists, a court must view the record as a whole, taking into
account evidence favorable as well as unfavorable to the
Commissioner's decision.  Chester v. Bowen, 792 F.2d 129, 131 (11th
Cir. 1986); Short v. Apfel, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala.
1999).

    B.   **Discussion**

    An individual who applies for Social Security disability
benefits must prove her disability.  20 C.F.R. §§ 404.1512,
416.912.   Disability is defined as the "inability to do any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected to
result in death or which has lasted or can be expected to last for
a continuous period of not less than twelve months."  42 U.S.C. §
423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  The Social
Security regulations provide a five-step sequential evaluation

5

process for determining if a claimant has proven her disability. 20 C.F.R. §§ 404.1520, 416.920.[4]  <u>See</u>, <u>e.g.</u>, <u>Crayton v. Callahan</u>, 120 F.3d 1217, 1219 (11th Cir. 1997).

In the case <u>sub judice</u>, the ALJ determined that while Plaintiff has the severe impairments of migraines, lumbar degenerative disc disease and cervical degenerative disc disease, she does not have an impairment or combination of impairments which meets or equals one of the Listings. (Tr. 33). The ALJ found that Plaintiff's subjective complaints were not fully credible and that she retains the RFC for light work.[5]  (<u>Id</u>. at 33-34).  The ALJ concluded, given VE testimony and other record evidence, that Plaintiff is capable of performing her PRW as a cashier/checker,

---

[4]The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove inability to perform their past relevant work.  <u>Jones v. Bowen</u>, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history.  <u>Id</u>. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  <u>Sryock v. Heckler</u>, 764 F.2d 834 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. <u>Jones v. Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999). <u>See also</u> <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing <u>Francis v. Heckler</u>, 749 F.2d 1562, 1564 (11th Cir. 1985)).

[5]Light work involves sitting 2 hours and walking and standing 6 hours in an 8 hour day as well as lifting no more than 20 pounds at a time.  20 C.F.R. § 404.1567(b), 416.967(b); SSR 83-10.

waitress, sewing machine operator and production line assembler;
thus, he found she is not disabled. (<u>Id</u>. at 34).

Based upon a review of the record, the undersigned finds that
the ALJ's decision is not supported by substantial evidence.
Relevant medical records reveal that Plaintiff was treated by
Mobile Family Physicians from 1995-1998 and was diagnosed with
severe headaches. (Tr. 195-198). Plaintiff was also treated at
Mobile County Health Department ("MCHD") from 1997-2001, for
migraines, vomiting, hot flashes and night sweats. (<u>Id</u>. at 279-
292). She was diagnosed with migraines and given a variety of
medications, including Zoloft, Prilosec, Buspar, Premarin, and
Axocet. (<u>Id</u>.)

On November 9, 1999, Plaintiff was treated at the University
of South Alabama Knollwood Park Hospital ("USA") for severe eye
pain, vomiting and a migraine. (<u>Id</u>. at 199-202). She was given
Inapsine,[6] told to refrain from work for 1-2 days and was referred
to the USA Headache Center. (<u>Id</u>.) From December 7-10, 1999,
Plaintiff was hospitalized at USA for a hysterectomy and bilateral
salpingo-oophorectomy, at which time Plaintiff reported a history
of migraines and it was noted that she was taking migraine
medications (Nadolol and Maltrex) as well as Zantac. (<u>Id</u>. at 203-
227).

---

[6]A tranquilizer used to reduce nausea and vomiting. <u>See</u> <u>www.webmd.com</u>
(Last visited 9/18/06).

On January 31, 2000, Plaintiff was treated by neurologist William J. Nowack, M.D. ("Dr. Nowack") for a gastric ulcer, a history of neck pain and excruciating headaches 2-3 times per day. (Tr. 234-247). Plaintiff reported that her migraine and pain medications did not help. (Id.) Dr. Nowack diagnosed her with migraines with aura, a gastric ulcer and osteoporosis. (Id.) Plaintiff was referred to Dr. John Rothrock of the USA Department of Neurology on February 23-24, 2000. (Id. at 230-231). She reported "intractable headaches[]" and indicated that her Maxalt (migraine medication) was not helping her migraines. (Id. at 230-238).

On February 7th and April 3rd, 2000, Plaintiff was treated by Viorel Raducan, M.D. ("Dr. Raducan"), of the USA Department of Orthopaedic Surgery, for persistent back pain and neck pain. (Id. at 249-251). It was noted that her medical history showed a history of migraines and that her migraine medications included Depakote, Climara and Maxalt. (Tr. 249-251). From February-March 2000, Plaintiff was treated at the USA Department of Internal Medicine Division of Gastroenterology, by Reynaldo L. Rodriguez, D.O. ("Dr. Rodriguez") for a biopsy/EGD after a referral for reflux and epigastric pain. (Id. at 295-304). It was noted that her history was significant for migraines, that she complained of nausea, vomiting and headaches, and that she was taking Flexeril, Celebrex, Maxalt, Phenergen, Alka Seltzer and Climara. (Id.)

On April 19, 2000, consultative clinical psychologist Lucille T. Williams, Psy. D. ("Dr. Williams") conducted a psychological evaluation, during which Plaintiff reported having migraines with blurred vision daily, like cluster headaches, that last for 2-3 days at a time. (Id. at 252-254). Plaintiff asserted that her migraines kept her in bed and nauseated, and that they increased in frequency and severity following the birth of her daughter. (Id.) A mental examination of Plaintiff revealed that she was oriented in four spheres, had essentially normal memory for immediate/remote events, intact thought processes, normal speech/conversation, no anxiety and fair insight/judgment. (Id. at 253-254). Dr. Williams diagnosed her with major depressive disorder and panic disorder without agoraphobia. (Tr. 254). She opined that Plaintiff would likely receive some benefit from treatment over the next 6-12 months and that she may also benefit from psychotherapy. (Id.)

Plaintiff has also undergone treatment from William Shepherd Fleet, M.D. ("Dr. Fleet") since 1995. (Id. at 347-373, 376, 391-392, 397-425, 482-484). Dr. Fleet's treatment records reveal reports of migraines (constant headaches with sharp pains in eyes, blurred vision), leg pain, back pain, lumbar strain, endomitriosis, and insomnia. (Id.) Plaintiff's exams reveal that she was alert, oriented in three spheres, had normal cranial nerve functioning, normal cerebellar functioning, normal motor functioning, normal sensory functioning, normal gait, normal language, normal

comprehension, normal lower extremity nerve conduction studies and a normal EEG. (Id.) Dr. Fleet diagnosed Plaintiff with migraines, insomnia and lumbar strain, and treated her with a variety of medications. (Id.) At times, she reported that her medication, including Celebrex, was "helping" but was only "somewhat effective" for her migraines and back pain. (Tr. 351, 357, 359, 361, 363, 391, 401).

On November 12, 2001, Dr. Fleet completed a Clinical Assessment of Symptoms in which he reported that he had treated Plaintiff since October 1995, and that she had been diagnosed with lumbar strain, migraines and insomnia. (Id. at 382-385). Dr. Fleet noted that her prognosis was "fair," that her impairments were expected to last at least 12 months, that she was not a malingerer, and that emotional factors contributed to the severity of her symptoms and functional limitations. (Id. at 382). Dr. Fleet concluded that Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations contained in the assessment; that her pain and/or other symptoms were present to such an extent as to be distracting to the adequate performance of daily activities or work; that physical activities (walking, sitting, standing, bending, stooping, moving of extremities, etc.) would cause an increase in the severity and degree of her pain and/or other symptoms, but not to such an extent as to cause her to abandon work or work-related tasks on a regular and sustained basis over the course of an 8 hour

10

day; that her prescribed medication causes side effects which impose some limitations upon her, but not to such a degree as to create serious problems in most instances; and that she has moderate limitations with her ability to deal with work stress. (Id. at 382-384).

Dr. Fleet further concluded that Plaintiff is totally restricted from activities involving unprotected heights; she is mildly restricted from activities involving being around moving machinery, exposure to marked changes in temperature and humidity, or driving automotive equipment; and she is not restricted with respect to activities involving exposure to dust, fumes and gases. (Id. at 384). Dr. Fleet opined that Plaintiff will sometimes need to take unscheduled breaks during an 8 hour working day, "bid" (twice a day), and that she will have to rest 15-30 minutes before returning to work. (Id.) Dr. Fleet added that Plaintiff will also need to lie down or recline during the day for about 15-30 minutes before returning to work, and that this will happen as often as "bid" (twice a day). (Tr. 384). Dr. Fleet noted further, that Plaintiff's impairments are likely to produce "good" and "bad" days, and that on average, he anticipates that they will cause her to be absent from work more than three days per month. (Id. at 385).

Records from January 2000-May 2001 reveal that she continued to receive treatment at several facilities, including USA, for her complaints of migraines and back/neck pain. (Id. at 181, 230-239,

11

241, 249-250, 293-297).  Her physical exams revealed a reduced spine range of motion with pain, diffuse lumbar tenderness, normal cervical spine range of motion, normal cranial nerve functioning, equal/round/reactive pupils, normal motor functioning, normal sensory functioning, normal coordination, normal reflexes, normal gait, no radiculopathy, loss of vertebral height but well-maintained disc spaces, no spondylolysis or spondyolisthesis, and normal cervical spine x-rays.  (Id.)

On July 16, 2001, clinical psychologist James F. Chudy, Ph.D ("Dr. Chudy") conducted an evaluation of Plaintiff at the request of the State Agency.  (Id. at 305-307).  Plaintiff reported often feeling depressed due to her physical/medical problems and that she suffers from crying spells, recurring headaches, poor appetite, pain, insomnia, low self-esteem, irritability and weight gain.  (Id.) Based upon his examination of Plaintiff, Dr. Chudy determined that she was oriented to time, place, person and situation; her immediate memory was adequate; she spoke normally; her ability to understand/complete simple verbal instructions seemed adequate; she had limited insight into herself and her condition; her ability to respond appropriately to others was restricted; and her intelligence was estimated to be in the low average range.  (Tr. 305-307).  Dr. Chudy diagnosed her with depression nos (Axis I); and migraines, IBS, TMJ and back problems (Axis III).  (Id. at 306).  He opined that a favorable response to treatment could be expected within 6-12 months.

(<u>Id</u>. at 307).

On July 26, 2001, Plaintiff was seen by neurologist Ilyas A. Shaikh, M.D. ("Dr. Shaikh) at the request of the State Agency. (<u>Id</u>. at 308-311). Plaintiff reported that since a 1976 car accident, she has suffered from daily headaches (with a current headache lasting 3 days) associated with nausea, vomiting, photo/phonophobia, double vision, low back pain (L-2 and L-3 fracture) and neck pain. (<u>Id</u>.) Dr. Shaikh diagnosed her with depression, history of migraines and history of chronic neck pain and back pain; he also opined that her multiple medications may affect her cognitive functions. (<u>Id</u>. at 310).

Additional records from Dr. Fleet for the 2002-2003 time frame reveal that Plaintiff continued to complain of suffering from migraines, and neck, back and leg pain. (Tr. 397-421, 482-484). She reported two visits to the emergency room due to the pain in 2002, and at times, reported bad headaches, accompanied by throbbing, nausea and vomiting. (<u>Id</u>.) The records reflect that she was anxious, "crying in pain," and complained that Maxalt was not helping her migraines. (<u>Id</u>.) <u>See</u> <u>also</u> (<u>Id</u>. at 403).

Plaintiff was treated at Pine City Medical Clinic, P.C. ("Pine City") from November 2002-March 2003. (<u>Id</u>. at 430-436). In November 2002, she initially reported that her migraines were better since she began taking Imitrex, but in March 2003, reported that she was having a bad reaction to the medication. (<u>Id</u>. at 430, 434). During this

time, Plaintiff was diagnosed with lower back strain, migraines and GERD and was given Toradol, Ultracet and Flexeril.  (Tr. 430-436).

From May-June, 2003, Plaintiff was seen at the Chatom Clinic by Nino Kurtsikidze, M.D. ("Dr. Kurtsikidze").  (Id. at 440-447). Plaintiff complained of neck pain, back pain, migraines and eye pain. (Id.)  An MRI of her brain revealed no abnormal results.  (Id. at 446).  Dr. Kurtsikidze diagnosed her with dysuria, headaches (most likely migraines), cervical radiculopathy and possible fibromyalgia. (Id. at 440).  He gave her Toradol for her neck pain and back pain, Maxalt for her acute migraines and also prophylaxis for her migraines with Verapamil.  (Id. at 440).  Dr. Kurtsikidze noted that the Toradol was providing Plaintiff with some relief.  (Tr. 440).

On July 11, 2003, Plaintiff was seen by board-certified psychiatrist and neurologist C.E. Smith, M.D. ("Dr. Smith") at the request of the State Agency.  (Id. at 448-450, 454).  Plaintiff reported having such problems as IBS, GERD, glaucoma, L-1 and L-2 compressions, reversed cervical lordosis of her neck, osteoarthritis, depression, anxiety, migraines and fibromyalgia.  (Id. at 448).  In a Mental Medical Source Opinion also completed on this date, Dr. Smith concluded that Plaintiff had mild limitations in her abilities to respond appropriately to supervisors, co-workers, customers or other members of the general public; use judgment in simple one or two step work-related decisions; use judgment in detailed or complex work-related decisions; deal with changes in a routine work setting;

14

maintain social functioning; and maintain activities of daily living.
(Id. at 451-452).

Progress notes of Jefferson Hicks, O.D. ("Dr. Hicks") from
February 2002-November 2003 and Franklin Primary Health Center, Inc.
("Franklin") records reveal that Plaintiff reported suffering from
migraines with eye pain. (Id. at 455-481, 572-580). In November
2003, Dr. Hicks diagnosed Plaintiff with migraines, chronic back/neck
pain, acid reflux and IBS, and prescribed medication; MRI studies
were recommended. (Id. at 576). Plaintiff's Franklin records from
October-November 2003 also reveal that she was treated for chronic
back and neck pain, migraines, glaucoma, vomiting, acid reflux and
IBS; she reported that her over-the-counter medications "ease the
pain." (Tr. 572-580). Plaintiff reported having migraines usually
once per week associated with an aura. (Id. at 578). She was
diagnosed with migraines and neck pain, and was treated with
medications and a cervical collar. (Id. at 578-579).

   1.   **Whether the ALJ erred by rejecting the opinion of Dr.
        Fleet, Plaintiff's treating physician, with regard to
        her migraines?**

Plaintiff contends that the ALJ erred by failing to properly
consider the opinion of Dr. Fleet, her treating physician, with
regard to her migraines. Plaintiff argues specifically, that while
the ALJ considered "longitudinal clinical records" in finding that
her migraines are severe, in evaluating the degree of severity, he
based his decision on a lack of objective clinical examination

15

findings in violation of the law, to then reject Dr. Fleet's opinion. Eleventh Circuit case law provides that controlling weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1159-1160 (11th Cir. 2004); Phillips v. Barnhart, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); Lewis v. Callahan, 125 F.3d 1436, 1439-1441 (11th Cir. 1997); 20 C.F.R. § 404.1527(d)(2).  "[G]ood cause exists when the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F.2d at 1240-1241 (citing to Lewis, 125 F.3d at 1440); Edwards v. Sullivan, 937 F.2d 580 (11th Cir. 1991) (holding that the ALJ properly discounted a treating physician's report where the physician was unsure of the accuracy of his findings and statements).  When a treating physician's opinion does not warrant controlling weight, the ALJ must clearly articulate his reasons, which must also be legally correct and supported by substantial evidence in the record.  Crawford, 363 F.3d at 1159-1560; Lamb v. Bowen, 847 F.2d 698, 703-704 (11th Cir. 1988).

In the case at hand, the ALJ referenced Dr. Fleet's treatment records as well as his Clinical Assessment of Symptoms form.  (Tr. 20-22, 26-27).  The ALJ determined that Plaintiff's migraines were a severe impairment, recognized Dr. Fleet's lengthy treatment of

16

Plaintiff's migraines, and acknowledged the fact that migraines "cannot be established through anatomical or physiological abnormalities that can be objectively observed and reported apart from the claimant's perceptions[;]" however, he nevertheless declined to assign determinative weight to Dr. Fleet's opinions *because* "[t]here are no clinical examination findings supportive of the claimant's alleged symptomatic complaints and the treatment records from Dr. Fleet do not contain any objective evidence that would contradict a finding that the claimant possesses a light residual functional capacity." (*Id.* at 26-27). This was error; neither the SSA nor the federal courts require that an impairment, including migraines, be proven through objective clinical findings.[7]

While Dr. Fleet did not cite to any laboratory tests or clinical findings confirming the existence or the severity of Plaintiff's

---

[7] *See*, *e.g.*, Ortega v. Chater, 933 F. Supp. 1071, 1075 (S.D. Fla. 1996) (noting that "present-day laboratory tests cannot prove the existence of migraine headaches[]" and holding that an ALJ improperly discounted a treating physician's opinion that a claimant was disabled by migraines, despite the fact that there were no laboratory tests confirming the existence or severity of the headaches, where the opinion of the treating physician was consistent, extensive, and substantiated by objective medical evidence that the claimant suffered from symptoms that were associated with severe migraine headaches). *See also e.g.*, Stebbins v. Barnhart, 2003 WL 23200371, *10-11 (W.D. Wis. Oct. 31, 2003) (remanding the ALJ's decision because it was based on errors, "foremost of which was a fundamental misunderstanding of the diagnosis and treatment of migraine headaches[]"); Diaz v. Barnhart, 2002 WL 32345945, *6 (E.D. Pa. Mar. 7, 2002) (stating that migraines "do not stem from a physical or chemical abnormality which can be detected by imaging techniques or laboratory tests, but are linked to disturbances in cranial blood flow[]"); Federman v. Chater, 1996 U.S. Dist. LEXIS 2893, at *6 (S.D.N.Y. Mar. 7, 1996) (noting that because there is no test for migraines, 'when presented with documented allegations of symptoms which are entirely consistent with the symptomatology for evaluating the claimed disorder, the Secretary cannot rely on the ALJ's rejection of the claimant's testimony based on the mere absence of objective evidence[]'").

migraines, he did set forth medical signs and symptoms sufficient to justify his diagnoses and treatment of same.  See supra.  And, the record reveals that since 1995, there have been multiple references to Plaintiff's continuing treatment for and/or continuing complaints of, migraines, associated with symptoms such as nausea, vomiting, blurred vision, severe eye pain, aura, photophobia, phonophobia, flashes of light, etc.,[8] and for which she has been prescribed a variety of medications (e.g., Nadolol, Maltrex, Maxalt, Inapsine, Imitrex, Celebrex, Depakote, Amitriptyline and Climara).[9]  Indeed, in almost every medical record and at almost every medical appointment/treatment, Plaintiff's migraines or history of treatment for migraines, were at least noted, but more often than not, her migraines were actually assessed - even when she sought treatment for a different medical problem.  See supra.  The ALJ, however, failed to acknowledge the abundant documentation of migraine diagnoses, symptoms and signs as being "objective" evidence to support Dr. Fleet's opinion.

Additionally, the ALJ found that Dr. Fleet's Clinical Assessment

---

[8] Many of these symptoms are, in fact, medical signs which are associated with severe migraines.  See, e.g., Ortega, 933 F. Supp. at 1075; Stebbins, 2003 WL 23200371, *10-11.  Because laboratory tests cannot prove the existence of migraines, as is also the case with other psychiatric and psychological impairments, these medical signs are often the only means available to prove their existence.  See, e.g., Sisco v. U.S. Dept. of Health and Human Services, 10 F.3d 739, 744 (10th Cir. 1993).

[9] (Id. at 80, 85, 87-88, 101-107, 114-130, 148-154, 181, 195-227, 230-250, 252-265, 270-277, 279-292, 293-297, 305-311, 347-373, 382-385, 391-392, 397-436, 440-450, 454-484, 572-580, 639, 641).

of Symptoms form contained inconsistent opinions; however, a review of the form does not reveal as such. (Tr. 382-385). See also supra. For instance, the ALJ found that Dr. Fleet's conclusions – that Plaintiff's pain would be distracting to the adequate performance of daily activities or work and that physical activities would increase her pain but not to the extent so as to cause her to abandon work or work-related tasks on a regular and sustained basis – were inconsistent; however, he failed to explain the inconsistency. Nor is it readily apparent. In neither instance did Dr. Fleet conclude that the pain, or that the pain coupled with physical activities, would cause Plaintiff to abandon work activities.

Additionally, the ALJ found that although Dr. Fleet's treatment notes reflect that the symptoms associated with Plaintiff's migraines have varied, he failed to address such in the Clinical Assessment of Symptoms. However, in the Clinical Assessment of Symptoms, Dr. Fleet specifically noted that Plaintiff would have "good days" and "bad days," that she would need to take rest breaks, and would likely miss three days a month from work. (Tr. 384-385).

Moreover, the ALJ discounted Dr. Fleet's opinion that Plaintiff was depressed and that her ability to deal with work stress was moderately limited, because his treatment notes do not reflect a mental examination of Plaintiff, notations that she exhibited any signs of depression or any information indicating that Dr. Fleet had referred her for formal mental health treatment. However, a review

of Dr. Fleet's 2003 treatment notes reveal that Plaintiff was anxious, appeared "crying in pain" and had persistent sleeping problems. (Tr. 347-373, 375, 391-392, 397-429, 482-483). And, the record reflects that throughout his treatment of Plaintiff, Dr. Fleet consistently prescribed anti-depressants and anti-psychotic medication. (Id.) Similarly, several of the doctors who examined Plaintiff diagnosed her with depression or a depressive disorder. Interestingly, psychiatrist Dr. Smith, whose opinion the ALJ appears to have given determinative weight, diagnosed Plaintiff with an adjustment disorder with depressed mood, chronic, and noted that although Plaintiff has no history of psychiatric treatment, "[h]er regular physician now is Dr. William Fleet and her medications [as prescribed from him] include a neuroleptic medication, Seroquel, in heavy dosage. Her other regular medications are . . . Lexapro, an antidepressant . . . ." (Id. at 448-450). And, Dr. Shaikh, who conducted a physical examination of Plaintiff at the request of the State Agency, also diagnosed her with depression, as did examining Drs. Williams and Chudy. (Id. at 254, 306, 310).

Based upon the totality of the evidence presented, the undersigned finds that the ALJ's discounting of Dr. Fleet's opinions was not based on substantial evidence. Accordingly, this case should be remanded for reconsideration of the proper weight to be accorded Dr. Fleet's opinions. To the extent the ALJ determines that Dr. Fleet's opinions are not due controlling weight, he must not only

articulate his reasons, but his reasons must be legally correct, and supported by substantial evidence in the record.  See, e.g., Crawford, 363 F. 3d at 1159-1560.  Additionally, upon remand, the ALJ should reassess Plaintiff's credibility.  In his decision, the ALJ found that Plaintiff's pain allegations were not substantiated by objective medical or other evidence and, therefore, were not fully accepted.  (Tr. 26-27, 30-33).  The ALJ's assessment of Plaintiff's credibility placed an undue emphasis on the absence of objective medical evidence.  However, given the nature of chronic migraines, upon remand, the ALJ should reassess Plaintiff's credibility giving due consideration to the need to go beyond objective medical evidence in properly evaluating such cases.  See, e.g., Bennett v. Barnhart, 288 F. Supp. 2d 1246 (N.D. Ala. 2003).

## V.   Conclusion

For the reasons set forth, and upon consideration of the administrative record and memoranda of the parties, it is recommended that the decision of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits and supplemental security income, is due to be **REVERSED** and **REMANDED.**

The attached sheet contains important information regarding objections to this report and recommendation.

**DONE** this the **18**th day of **September, 2006.**

                    /s/Sonja F. Bivins
            **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1. **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3. **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                              /s/SONJA F. BIVINS
                        **UNITED STATES MAGISTRATE JUDGE**